**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

......................................................................................

| | |
|---|---|
| EDWARD C. HUGLER, | : |
| ACTING SECRETARY OF LABOR | : |
| UNITED STATES DEPARTMENT OF LABOR, | : |
| Plaintiff, | : |
| | : Civil Action No. |
| v. | : 4:16-CV-1512 |
| | : |
| BRISTOL EXCAVATING, INC. and | : |
| CALVIN BRISTOL, individually and as owner of | : |
| BRISTOL EXCAVATING, | : |
| Defendants. | : |

......................................................................................  :

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


Nicholas C. Geale
Acting Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

By: */s/ Bertha M. Astorga*
Bertha M. Astorga
Attorney, PA Bar # 320644
Office of the Solicitor
Suite 630E, The Curtis Center
170 S. Independence Mall West
Philadelphia, PA 19106-3306
(215) 861-5126
(215) 861-5162 (fax)
Astorga.Bertha.M@dol.gov

U.S. DEPARTMENT OF LABOR

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................6

FACTUAL BACKGROUND...........................................................................7

COVERAGE......................................................................................................9

ARGUMENT ..................................................................................................10

   I.     Summary Judgment Standard ..................................................11

   II.    Defendants Violated the FSLA Overtime Requirements by Not Including Bonus Payments in the Regular Rate ...............................................12

      i.   Mix-off operators' bonuses are nondiscretionary bonuses ........................14

      ii.  Bonuses should be included in the regular rate despite being client-sponsored.......................................................................................................19

   III.   Calvin Bristol is an Employer and Individually Liable .............................21

   IV.   Defendants are Liable for Liquidated Damages .........................................24

   V.    The Undisputed Evidence Confirms that a total of $16,001.74 in Back Wage and Liquidated Damages Should be Awarded...........................................26

   VI.   Defendants' Violations of the Act Warrant Injunctive Relief....................28

CONCLUSION ................................................................................................29

# TABLE OF AUTHORITIES

Cases

*Adler v. Walmart Stores, Inc.*,
  144 F.3d 664 (10th Cir. 1998) .............................................................................12

*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242 (1986) ...........................................................................................11

*Armbruster v. Unisys Corp.*,
  32 F.3d 768 (3d Cir.1994) ..................................................................................11

*Arnold v. Ben Kanowsky, Inc.*,
  361 U.S. 388 (1960) ...........................................................................................10

*Auer v. Robbins*,
  519 U.S. 452 (1997) ...........................................................................................10

*Brennan v. City of Philadelphia*,
  2016 WL 3405449 (E.D. Pa 2016).....................................................................17

*Brock v. Claridge Hotel and Casino*,
  846 F.2d 180 (3d Cir. 1988) ..............................................................................25

*Brock v. Hamad*,
  No. 86-757-CIV-5, 1987 WL 46573 (E.D.N.C. Nov. 25, 1987) ........................29

*Brock v. Wilamowsky*,
  833 F.2d 11 (2d Cir. 1987) ................................................................................25

*Brooks v. Village of Ridgefield Park*,
  185 F.3d 130 (3d Cir. 1999) ............................................................. 17, 24, 25, 26

*Celotex Corp. v. Cattrett*,
  477 U.S. 317 (1986) ...........................................................................................11

*Chao v. A-One Medical Services, Inc.*,
  346 F.3d 908 (9th Cir. 2003) ..............................................................................11

*Davis v. Mountaire Farms, Inc.*,
  453 F.3d 554 (3d Cir. 2006) ..............................................................................13

*Disney v. Entenmann's, Inc.*,
  No. Civ. H-99-2247, 2000 WL 1721793 (D.Md. Nov. 17, 2000) .......................12

*Dole v. Haulaway, Inc.*,
  723 F. Supp. 274(D.N.J. 1989).................................................................... 22, 28

*Donovan v. Rockwell Tire & Fuel, Inc.*,
  No. C-79—498, 1982 WL 2120 (M.D.N.C. Mar. 30, 1982) ..............................28

*Elwell v. Univ. Hosp. Home Care Services*,
  276 F. 3d 832 (6th Cir. 2002) ............................................................................25

FLSA2005-4NA,
  2005 WL 5419040 (July 5, 2005).......................................................................20

*Gonzalez v. McNeil Technologies, Inc.*,
   2007 WL 1097887 (E.D. Va. 2007) ...................................................................16
*Herman v. Anderson Floor Co.*,
   11 F. Supp.2d 1038 (E.D. Wisc. 1998) .............................................................10
*In re Enter. Rent-A-Car Wage & Hour Practices Litig.*,
   683 F.3d 462 (3d Cir. 2012) .............................................................................22
*Jackson v. Art of Life, Inc.*,
   836 F. Supp. 2d 226 (E.D. Pa. 2011).................................................................22
*Lenroot v. Kemp*,
   153 F.2d 153 (5th Cir. 1946) ............................................................................28
*Madison v. Resources for Human Dev., Inc.*,
   233 F.3d 175 (3d Cir. 2000) ...................................................................... 13, 15
*Marshall v. Brunner*,
   668 F.2d 748 (3d Cir. 1982) ...................................................................... 24, 25
*Marshall v. Van Matre*,
   634 F.2d 1115 (8th Cir. 1980)...........................................................................28
*Martin v. Cooper Elec. Supply Co.*,
   940 F.2d 896 (3d Cir. 1991) .............................................................................24
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..........................................................................................11
*McClanahan v. Mathews*,
   440 F.2d 320 (6th Cir. 1971) ............................................................................25
*McComb v. Shepard Niles Crane & Hoist Corp.*,
   171 F.2d 69 (2d Cir. 1948) ...............................................................................16
*Min Fang Yang*,
   345 Fed. Appx. 35 (6th Cir. 2009) ....................................................................25
*Minizza v. Stone Container Corp.*,
   842 F.2d 1456 (3d Cir. 1988) ...........................................................................15
*Mitchell v. Hausman*,
   261 F.2d 778 (5th Cir. 1958).............................................................................28
*Monroe v. Beard*,
   536 F.3d 198 (3d Cir. 2008) .............................................................................11
*Reich v. Brenaman Electrical* Service,
   Civ. No. 95-3737, 1997 WL 164235 (E.D. Pa. Mar. 28, 1997)..........................24
*Reich v. Cole Enter., Inc.*,
   901 F. Supp. 255 (S.D. Ohio 1993)...................................................................28
*Schamann v. O'Keefe*,
   314 F. Supp. 2d 515 (D. Md. 2004) ..................................................................12
*Smiley v. E.I. Dupont De Nemours and Co.*,
   839 F.3d 325 (3d Cir. 2016) .............................................................................13

*Solis v. A-1 Mortg. Corp.*,
   934 F. Supp. 2d 778 (W.D. Pa 2013) ................................................22
*United States v. Rosenwasser*,
   323 U.S. 360 (1945) .........................................................................22
*Walling v. Harnischfeger Corp.*,
   325 U.S. 427 (1945) .........................................................................17
*Walling v. Richmond Screw Anchor Co.*,
   154 F.2d 780 (2d Cir. 1946) .................................................. 15, 16, 18
*Walling v. Wall Wire Products*,
   161 F.2d 470 (6th Cir. 1947) ...........................................................17
*Walling v. Youngerman-Reynolds Hardwood Co.*,
   325 U.S. 419 (1945) .........................................................................13
*Walton v. United Consumers Club, Inc.*,
   786 F.2d 303 (7th Cir 1986) ............................................................24
*Williams v. Tri-County Growers, Inc.*,
   747 F.2d 121 (3d Cir. 1984) ............................................................25

Statutes
29 U.S.C. § 203(d) .............................................................. 7, 21, 23, 29
29 U.S.C. § 203(g) .................................................................................21
29 U.S.C. § 203(r) ...................................................................................9
29 U.S.C. § 207 ............................................................................ 6, 7, 29
29 U.S.C. § 207(a)(1) .........................................................................9, 12
29 U.S.C. § 207(e) .......................................................................... 13, 14
29 U.S.C. § 207(e)(1)-(8) .......................................................................14
29 U.S.C. § 216(b) .................................................................... 7, 26, 29
29 U.S.C. § 216(c) .................................................................................24
29 U.S.C. § 217 ......................................................................................28

Rules
Fed. R. Civ. P. 56(c) .............................................................................11
Rule 56(e) ..............................................................................................12

Regulations
29 C.F.R. at § 778.211(b) .......................................................................15
29 C.F.R. § 778.209(b) ................................................................... 17, 27
29 C.F.R. § 778.211(c) ...........................................................................15
29 C.F.R. §778.211(b), (c) ....................................................................17

**INTRODUCTION**

Plaintiff Edward C. Hugler, Acting Secretary of Labor, U.S. Department of Labor ("Plaintiff") files this memorandum of law in support of Plaintiff's Motion for Summary Judgment.  The undisputed facts prove that Defendant Bristol Excavating Inc. (hereinafter, "Bristol Inc.") and Defendant Calvin Bristol, president and owner of Bristol Inc. ("Mr. Bristol"), failed to pay their employees the proper overtime premium when they did not include performance bonuses in the regular rate of pay upon which the overtime premium rate was based, in violation of Section 7 of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 207.

During the relevant period, Bristol Inc. employed six individuals to work as mix-off operators (hereinafter, the "Mix-Off operators").   The Mix-off operators performed work at rigs operated by Bristol Inc.'s client contractor Talisman Energy, Inc. (hereinafter, "Talisman").   The Mix-off operators received performance-based bonuses, which they were promised before they started the work.  The bonuses were sponsored by Talisman but distributed by Bristol Inc. The Mix-off operators regularly worked around 80 hours in a workweek but Defendants failed to include the bonuses in the regular rate when calculating overtime premium.

There are no genuine issues of material fact as to the Defendants' violations of the FLSA and their obligation to pay liquidated damages for their FLSA violations.  Defendants have conceded that the Mix-off operators received bonuses. The record is clear in showing that such bonuses were based on safety and productivity.  Employees were aware of the bonuses and the requirements for the bonuses before they performed the work.  The Act and regulations are clear that this type of non-discretionary performance bonus must be included in the regular rate of pay when calculating the overtime amount due.  Defendants ignored that well-established law and made no effort to ensure that they were in compliance with the FLSA.

The attached pleadings, deposition transcripts, admissions and Defendants' own records demonstrate that as a matter of law: (1) Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207; (2) Defendant Calvin Bristol is an employer under 29 U.S.C. § 203(d) and individually liable for the violations along with Bristol Inc.; (3) Defendants are liable for $8,000.87 in overtime back wages; (4) Defendants are liable for an equal amount in liquidated damages under 29 U.S.C. § 216(b); and (5) Defendants' violations warrant injunctive relief.

## FACTUAL BACKGROUND

As set forth in the Plaintiff's Statement of Undisputed Material Facts, Defendants have failed to include the Mix-off operators' bonuses in the regular

rate upon which overtime compensation is based.  Defs.' Reply to Pl.'s Req. for Admis. No. 10. Since around 2010, Defendant Bristol Inc. contracted with Talisman to provide services on Talisman rigs, including mix-off services.  Calvin Bristol Dep. 78:18 – 79:13.  The Mix-off operators worked long hours, typically working twelve and one-half hour days for fourteen days straight.  Calvin Bristol Dep. 66:12-24, 67:3-8; Jennings Dep. 4:16 – 5:8; Long Dep. 6:1-7; Rockwell Dep. 6:5-7; Tillotson Dep.  4:8-19, 6:18-20.

The Mix-off operators first started receiving bonuses after Bristol Inc.'s business manager and Calvin Bristol's daughter in law, Krystle Bristol, spoke to its client and arranged for the Mix-off operators to be included in a bonus program. Krystle Bristol Dep.  5:25 – 6:18, 9:5-15.  When Bristol Inc. first arranged for Mix-off operators' bonuses, Krystle Bristol informed Bristol Inc. management and the Mix-off operators of the requirements for such bonuses to be awarded.  Krystle Bristol Dep. 9:16 – 10:21; Calvin Bristol Dep. 103: 17-22.  Krystle informed the Mix-off operators of the bonuses and the process for qualifying prior to the work being performed.  Krystle Bristol Dep. 10:9-21.

There were three types of bonuses that the Mix-Off operators received: safety bonus, pacesetter bonus and AFE bonus.  McNeal Dep. 29:4-6, 35:1-5; McNeal Dep. Ex. 1; Jennings Dep. 6:13-21; Long Dep. 6:11 – 7:1; Rockwell Dep. 7:5 – 8:2; Calvin Bristol Dep. 89:9-21, 100:24 – 101:8.  Safety bonuses were

awarded if there were no safety incidents; AFE bonuses were awarded for being ahead of schedule when the well was done; and the pacesetter bonuses were awarded if a well was drilled faster than a specified amount of time.  Jennings Dep. 6:13-21; Long Dep. 6:11 – 7:1; Calvin Bristol Dep. 100:24 – 101:8.  17.  The Mix-off operators were aware of the terms of these bonuses.  Jennings Dep. 6:13-21; Long Dep. 6:11 – 7:1; Rockwell Dep. 6:23 – 7:17.   These requirements would also be explained at safety meetings and charts explaining why a hole was eligible for a bonus would also be shown.   Jennings Dep. 10:8-19; Long Dep. 7:14-16, 12:8 – 13:10; Long Dep. Ex. 1, at 2-3; Rockwell Dep. 10:18 – 11:1, 15:2-15; Rockwell Dep. Ex. 1, at 2.  Additionally, the Mix-off operators knew the purpose of the bonuses was to incentivize them to work more efficiently.  Jennings Dep. 12:7-18; Long Dep. 11:3-8; Rockwell Dep. 13:20 – 14:7.

## COVERAGE

To be subject to the FLSA's overtime provisions, the employer must be an "enterprise" engaged in commerce.  29 U.S.C. § 207(a)(1).  Defendants do not dispute coverage in this matter.  The business activities of Defendants are related and performed through unified operation or common control for a common business purpose, constituting an enterprise under 29 U.S.C. § 203(r).  Compl. ¶ III; Answer of Def. Calvin Bristol ¶ III; Answer of Def. Bristol Excavating ¶ III. Defendants employed employees engaged in commerce, or handling, selling or

otherwise working on goods or materials that have been moved in or produced for commerce.  Compl. ¶ IV; Answer of Def. Calvin Bristol ¶ IV; Answer of Def. Bristol Excavating ¶ IV.  Bristol Inc. has had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.  Compl. ¶ IV; Answer of Def. Calvin Bristol ¶ IV; Answer of Def. Bristol Excavating ¶ IV; Defs.' Answer to Pl.'s Interrog. No. 14 (annual gross revenue of over $3.5 million for fiscal years 2014, 2015 and 2016).  Therefore, Defendants' employees have been employed in an enterprise engaged in commerce, and are protected by the FLSA overtime provisions.

## ARGUMENT

Plaintiff is entitled to a summary judgment ruling on all issues.  First, the court should find that the bonuses the Mix-off operators received were not excludable from the regular rate because Defendants cannot meet their significant burden of establishing that any exception applies.  *See Auer v. Robbins*, 519 U.S. 452, 462-63 (1997); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 391 (1960) (recognizing the established "rule" that FLSA exemptions are to be narrowly construed against the employer").  *See also, e.g.*, *Herman v. Anderson Floor Co.*, 11 F. Supp.2d 1038, 1042 (E.D. Wisc. 1998) (imposing burden on employer to show that the exemption in Section 7(e)(3) applies) .  This resulted in a violation of Section 7 of the Act.  The undisputed material facts also establish that Calvin

10

Bristol was a Section 3(d) employer and therefore liable for Bristol Inc.'s violations; that Defendants are liable for $8,000.87 in back wages; that Defendants are liable for an additional equal amount in liquidated damages due to the affected Mix-off operators; and that Defendants' violations warrant injunctive relief.

## I.    Summary Judgment Standard

Summary judgment is warranted if the Court is satisfied that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Accordingly, summary judgment will be granted unless a reasonable fact-finder could return a verdict for the nonmoving party on the evidence presented. *See Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)).  Summary judgment is often granted to plaintiffs in FLSA cases when the evidence shows no genuine issue of material fact.  *See*, *e.g.*, *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003), *cert. denied* 541 U.S. 1030 (2004).

A party opposing a properly supported motion for summary judgment must establish that a genuine issue of material fact is to be resolved.  *Anderson v. Liberty*

*Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  The adverse party may not rest on mere denials of the pleading of the moving party, but must respond by affidavits or by other evidentiary materials as provided in Rule 56(e) setting forth "specific facts showing that there is a genuine issue for trial."  *Disney v. Entenmann's, Inc.,* No. Civ. H-99-2247, 2000 WL 1721793, at *4 (D.Md. Nov. 17, 2000) (citation omitted).  The non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler v. Walmart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 522 (D. Md. 2004) (citation omitted).  Plaintiff has met his burden of production and is entitled to judgment as a matter of law on each of the issues addressed below.

## II.     Defendants Violated the FSLA Overtime Requirements by Not Including Bonus Payments in the Regular Rate

The FLSA requires employers to pay their employees one and one-half times the employees' "regular rate" for hours worked in excess of the forty hours in a workweek.  29 U.S.C. § 207(a)(1).  Section 7(e) of the Act defines the regular rate as "all remuneration for employment paid to, or on behalf of, the employee" except

for specific types of payment listed under subsection (e)(1) through (e)(8).  29

U.S.C. § 207(e).  The regular rate "'is not an arbitrary label chosen by the parties;

it is an actual fact,' that by 'its very nature must reflect all payments which the

parties have agreed shall be received regularly during the workweek, exclusive of

overtime payments.'"  *Smiley v. E.I. Dupont De Nemours and Co.*, 839 F.3d 325,

330 (3d Cir. 2016)(citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325

U.S. 419, 424-25 (1945)).  Because the FLSA's default rule is that the regular rate

includes all remuneration, the burden falls on the employer to establish that the

remuneration in question falls under an exemption and should not be included in

the regular rate.  *See Smiley*, 839 F.3d at 330 (recognizing "'several exceptions to

the otherwise all-inclusive rule set forth in section 207(e),' but the statutory

exclusions 'are narrowly construed, and the employer bears the burden of

establishing [that] an exception [applies].'") (citation omitted).  The Third Circuit

has consistently construed FLSA exemptions narrowly against the employer.

*Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006).  *See also*

*Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175, 183, 187 (3d Cir. 2000)

(noting that there is an FLSA presumption to include remuneration and that it's the

employer's "significant" burden to show an exclusion applies).

### i.   Mix-off operators' bonuses are nondiscretionary bonuses

The types of remuneration that are excluded from the regular rate are limited

to the few exceptions listed in Section 7(e) of the Act.  29 U.S.C. § 207(e)(1)-(8).

Among the types of payment not to be included in the regular are:

> (1)     sums paid as gifts; payments in the nature of gifts made at
> Christmas time or on other special occasions, as a reward for service,
> the amounts of which are not measure by or dependent on hours
> worked, production, or efficiency;…

> (3)     Sums paid in recognition of services performed during a given
> period if either, (a) both the fact that payment is to be made and the
> amount of the payment are determined at the sole discretion of the
> employer at or near the end of the period and not pursuant to any prior
> contract, agreement, or promise causing the employee to expect such
> payments regularly;….

29 U.S.C. § 207(e).  The gift exception does not apply in this case because the

Mix-off operators' bonuses were dependent on production and efficiency. Jennings

Dep. 6:13-21, 12:7-18; Long Dep. 6:11 – 7:1, 11:3-8; Rockwell Dep. 13:20 – 14:7;

Calvin Bristol Dep. 100:24 – 101:8.  Therefore, the only relevant exception that

Defendants could possibly assert and would have the burden to prove is that the

bonuses were discretionary under Section 7(e)(3)(a).

The Department of Labor ("DOL") has provided guidance on the types of

bonuses that may be excluded from the regular rate through Part 778 regulations,

the Wage and Hour Division Field Operations Handbook, opinion letters and

interpretive bulletins.  The regulations clarify that for a bonus to be discretionary

and excludable per Section 7(e)(3)(a), the employer "must retain discretion *both* as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." 29 C.F.R. at § 778.211(b) (emphasis added). "If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it." *Id.*; *Minizza v. Stone Container Corp.*, 842 F.2d 1456, 1462 (3d Cir. 1988) (characterizing bonuses made to "induce" action and paid pursuant to a prior agreement as not discretionary). Bonuses which "are announced to employees to induce them to work more steadily or more rapidly or more efficiently or remain with the firm are regarded as part of the regular rate of pay." 29 C.F.R. § 778.211(c). *See Minizza*, 842 F.2d at 1463 (ruling to exclude bonuses under a collective bargaining agreement because they "were not given as compensation for hours work or services rendered"). "Attendance bonuses, individual or group productions bonuses" and "bonuses for qualify and accuracy of work" are included in the regular rate. *Id. See also* Field Operations Handbook (FOH) ¶ 32c00(b), *available at* https://www.dol.gov/whd/FOH/FOH_Ch32.pdf. (listing "production bonuses" and "bonuses which are paid for performing work in less than an established standard time" as bonuses included in the regular rate).

The DOL has been consistent with its guidance on what constitutes non-discretionary bonuses that must be included in the regular rate. The guidance has been longstanding, dating back to a 1945 Interpretive Bulletin. *Walling v.*

*Richmond Screw Anchor Co.*, 154 F.2d 780, 782-83 (2d Cir. 1946) (citing in part

the published bulletin).  The Interpretive Bulletin explained that excludable

bonuses are those which:

> The employee has no contractual right, express or implied, to any
> amount.  This type of bonus is illustrated by the employer who pays
> his employees a share of the profits of is business or a lump sum at
> Christmas time without having previously promised, agreed, or
> arranged to pay such bonus. In such case, the employer determines
> that a bonus is to be paid and also sets the amount to be paid.

*Id*.   Moreover, the Interpretive Bulletin elaborates that bonuses must be included

in the regular rate when:

> [T]he employer promises, agrees or arranges to pay a bonus.  The
> amount to be paid may be fixed or may be ascertainable by the
> application of a formula.  An example of this type of plan is a
> production bonus based on the excess over a minimum quota which
> the individual, the group, or the plan, produces in a period of time.
> Closely akin is a bonus which is paid for performing work in less than
> an established standard time and also a bonus which is paid when
> certain types of merchandise are sold through an employee's efforts.

*Id*.

The fact that an employee cannot legally compel the employer to pay out the

bonus does not make such bonuses excludable from the regular rate.  *Richmond*

*Screw Anchor Co.*, 154 F.2d at 784; *McComb v. Shepard Niles Crane & Hoist*

*Corp.*, 171 F.2d 69, 71 (2d Cir. 1948). *See also Gonzalez v. McNeil Technologies,*

*Inc.*, 2007 WL 1097887 at *3-*4 (E.D. Va. 2007) (acknowledging that "plaintiff

did not have an enforceable 'right' to any given bonus" but holding that bonuses

were not discretionary because they had been promised to the employees, despite the employer conditioning receipt of bonuses on the company's financial well-being and other factors).  The fact that "the bonus payments are not made weekly or monthly" is also "of no consequence." *Walling v. Wall Wire Products*, 161 F.2d 470, 474 (6th Cir. 1947). *See* 29 C.F.R. § 778.209(b) (accounting for bonuses being paid several workweeks after the work performed to the point where the bonus earnings cannot be identified with particular workweeks); *Walling v. Harnischfeger Corp.,* 325 U.S. 427, 432 (1945) (rejecting Respondents' argument that because the incentive bonuses are not determined or paid until weeks or even months after the payday they should be excluded). *See also Brooks v. Village of Ridgefield Park,* 185 F.3d 130, 135 (3d Cir. 1999) (delay "reasonably necessary for the employer to compute and arrange for the payment of the amount due" in overtime compensation is allowed);  *Brennan v. City of Philadelphia*, 2016 WL 3405449 at *2 (E.D. Pa 2016) (acknowledging delays in payroll processing due to the nature of the work, notes that "excess overtime compensation" can be "paid as soon as practicable").

The types of bonuses that the Mix-off operators received are clearly performance bonuses intended to incentivize employees to work more quickly and without accidents.  Such bonuses are explicitly identified in the regulations and interpretative guidance as includable in the regular rate. 29 C.F.R. §778.211(b),

(c); FOH ¶ 32c00(b) *available at* https://www.dol.gov/whd/FOH/FOH_Ch32.pdf.;
*Richmond Screw Anchor Co.*, 154 F.2d at 782-83. These bonuses were offered to
induce employees to work more efficiently. The AFE and pacesetter bonuses were
offered to get them to work faster and to get the work done before an established
standard time. Jennings Dep. 6:13-21; Long Dep. 6:11 – 7:1; Calvin Bristol Dep.
100:24 – 101:8. The safety bonus was also used to increase productivity, as any
safety incident would disrupt and delay production. *See* Calvin Bristol Dep. 85:19
– 86:21.

Not surprisingly, because they were performance bonuses, the employees
were told in advance that they would receive the bonuses if they met the criteria.
Bristol Inc. informed the employees about the bonuses when they first enrolled in
the bonus program. Krystle Bristol Dep. 9:16 – 10:21; Calvin Bristol Dep. 103:
17-22. Information pertaining to the bonuses and whether they had qualified for a
bonus for a particular hole was made available to the Mix-off operators at the
safety meetings. Jennings Dep. 10:8-19; Long Dep. 7:14-16, 12:8 – 13:10; Long
Dep. Ex. 1, at 2-3; Rockwell Dep. 10:18 – 11:1, 15:2-15; Rockwell Dep. Ex. 1, at
2. The Mix-off operators were aware of the different types of bonuses and the
requirements for such bonuses. Jennings Dep. 6:13-21; Long Dep. 6:11 – 7:1;
Rockwell Dep. 6:23 – 7:17. It would, of course, make little sense to institute
performance bonuses without telling employees about them in advance. Because

18

they were promised in advance as an incentive, the employer did not have discretion as to either the fact that the bonus would be paid or the bonus amount.

Defendants arranging for the payment of bonuses, Defendants informing the Mix-off operators of the bonuses, the Mix-off operators knowing of the requirements to qualify for the bonuses, and the fact that the bonuses incentivized productivity are all facts that support the conclusion that the Mix-off operators' bonuses were non-discretionary, and exactly of the sort that the statute and regulations dictate must be included in the regular rate.

### ii. Bonuses should be included in the regular rate despite being client-sponsored

Like any company with clients, Bristol Inc.'s expenses, including the cost of labor, are funded by the payments they receive from those customers. The bonuses are funded by Bristol Inc.'s client Talisman but Bristol Inc. controls the distribution of the bonus payments to its employees. Bristol Inc. would distribute the bonus payments to the Mix-off operators in Bristol Inc. paychecks or direct deposit from Bristol Inc. McNeal Dep. 58:11-14; Calvin Bristol Dep. 100:1-14; Jennings Dep. 11:8-11; Long Dep. 13:23 - 14:1; Tillotson Dep. 8:9-12, 10:17-19. Bristol Inc. would record the bonus payments in payroll. Mowday Decl. ¶ 8. Bristol Inc. would withhold 25 percent from the bonus payment to cover taxes, insurance, and other costs. McNeal Dep. 48:9-12, 59:2 – 60:2; Krystle Bristol Dep. 10:22 - 11:5. The fact that the bonuses were sponsored by Bristol Inc.'s

client does not change the conclusion that the bonuses should have been included in the regular rate.

In a 2005 Opinion Letter (hereinafter, "Opinion Letter"), the DOL addresses a question posed by a retail employer whose employees receive bonuses for selling a vendor's products as part of a vendor-sponsored bonus program.   FLSA2005-4NA, 2005 WL 5419040 (July 5, 2005).  The employer asked whether such bonus would be included in the regular rate "if the amount and nature of the bonus are determined by the vendor." *Id*.  Relying on Section 7(e) of the Act, Part 778 of the regulations, and the Field Operations Handbook, the DOL clarifies that because the vendor informs the employees of the requirements for the bonuses prior to the work being performed, the bonuses are promised to the employees and thus must be included in the regular rate.  *Id*.

The facts in this matter resemble that of the scenario which the Opinion Letter addresses.  First, the bonuses are sponsored by a third-party entity which has a business relationship with the employer; in this case the "vendor" is Talisman, a contractor client.  Secondly, the third-party informs the employees of the requirements for the bonuses prior to the work being performed.  In the case at hand, Talisman goes over the terms of the bonuses in the safety meetings. Jennings Dep. 10:8-19; Long Dep. 7:14-16, 12:8 – 13:10; Long Dep. Ex. 1, at 2-3; Rockwell Dep. 10:18 – 11:1, 15:2-15; Rockwell Dep. Ex. 1, at 2.  Additionally, unlike in the

Opinion Letter's fact pattern, the Mix-off operators were also informed by the employer Bristol Inc. of the bonus requirements.  Krystle Bristol Dep. 9:16 – 10:21.

As referenced in the Opinion Letter, the Field Operations Handbook also addresses the issue of bonuses sponsored by third party.  The Handbook explains that "push money" or other payments made by suppliers, manufacturer or distributors to get employees to sell certain items or brands must be included in the regular rate, regardless of whether the payments are made directly to the employees or to the employer for distribution to the employees. FOH ¶ 32b07, *available at* https://www.dol.gov/whd/FOH/FOH_Ch32.pdf.  Here, similarly, Bristol Inc.'s client is funding an employee incentive payment that benefits that client, and this employee compensation must be included in the regular rate.

Thus, non-discretionary bonuses must be included in the regular rate regardless of how they are funded.  The fact that the Mix-off operators' bonuses were sponsored by Bristol Inc.'s contracting client Talisman does not make them discretionary or otherwise excludable from the regular rate.

### III.    Calvin Bristol is an Employer and Individually Liable

The Act defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Act broadly defines employment as "to suffer or permit to work." 29 U.S.C. §

203(g).  Defendants have conceded Calvin Bristol's status as an employer.  Compl.

¶ II; Answer of Def. Calvin Bristol ¶ II; Answer of Def. Bristol Excavating ¶ II.

The Third Circuit has recognized that the FLSA's definition of "employer"

is "the broadest definition that has ever been included in any one Act."  *In re*

*Enter. Rent-A-Car Wage & Hour Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir.

2012) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)).   In

determining whether an individual is a "joint employer" under the FLSA, the Third

Circuit has held that the courts should consider whether the employer has:

> (1) authority to hire and fire employees; (2) authority to promulgate
> work rules and assignments, and set conditions of employment,
> including compensation, benefits, and hours; (3) day-to-day
> supervision, including employee discipline; and (4) control of
> employee records, including payroll, insurance, taxes, and the like.

*Enter. Rent-A-Car*, 683 F.3d at 469; *see also Solis v. A-1 Mortg. Corp.*, 934 F.

Supp. 2d 778, 790-95 (W.D. Pa 2013) (applying the *Enterprise* test to find that an

individual is a joint employer).  A corporate officer with operational control,

especially one that makes decisions about how employees are paid, is an

"employer" and liable for unpaid wages. *Jackson v. Art of Life, Inc.* 836 F. Supp.

2d 226, 235 (E.D. Pa. 2011)(citing *Dole v. Haulaway, Inc.* 723 F. Supp. 274, 286-

87(D.N.J. 1989), *aff'd* 914 F.2d 242 (3d 1990)) (holding that corporate officer who

was responsible for deciding how the affected employees were paid was an

employer  and jointly and severally liable for unpaid wages).

Mr. Bristol has authority to hire and fire employees.  Calvin Bristol Dep. 31:1-6.  He has authority to set employees' work schedules and pay rates.  Calvin Bristol Dep. 31:7 – 31:1; McNeal Dep. 12:2 – 13:18.  Mr. Bristol is responsible for overseeing all employees, including the Account Manager.  Calvin Bristol Dep. 40:23-24.  Mr. Bristol played a part in the violation when he failed to review the Account Manager's work or take steps to ensure her overtime computations were in compliance with the Act.  Calvin Bristol Dep. 116:17 – 118:2.  Additionally, he was aware of how they were computing overtime premium but did not instruct anyone to determine whether Bristol Inc.'s payroll practices were compliant.  *See* Calvin Bristol Dep. 112:24 – 113: 17 (acknowledging that overtime was based solely on the wage rate); Calvin Bristol Dep. 120:2-6 (admitting that he did not instruct anyone to research whether they were properly calculating overtime).

As the sole owner of the company, Mr. Bristol possesses control of and access to all of Bristol Inc.'s records.  Calvin Bristol Dep. 14:11-25, 17:5-7 (claiming 100% ownership interest in Bristol Inc.).  Mr. Bristol has actively controlled and managed the employment of persons at Bristol Inc., and acted directly and indirectly in the interest of Bristol Inc. in relation to the employees; therefore, he is an employer within the meaning of 29 U.S.C. § 203(d) .  Compl. ¶ II; Answer of Def. Calvin Bristol ¶ II; Answer of Def. Bristol Excavating ¶ II.

## IV. Defendants are Liable for Liquidated Damages

Under Section 16(c), the Secretary may recover unpaid wages and an additional equal amount in liquidated damages if an employer violates Section 7 of the Act. *See* 29 U.S.C. § 216(c). Liquidated damages are considered compensatory, not punitive. *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907 (3d Cir. 1991). They compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due. *See id.* "Double damages are the norm, single damages the exception[.]" *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir 1986).

In challenging the appropriateness of liquidated damages, the employer bears the "plain and substantial" burden of establishing both good faith and reasonable grounds for the violation. *See Cooper Elec. Supply Co.,* 940 F.2d at 907. To carry his burden on the good faith prong, an employer must show that it took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions. *Id.* at 908. To establish good faith, the employer must prove "an honest intention to ascertain and follow the dictates of the Act." *Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir. 1982). Merely proving that the employer did not act intentionally, had good intentions, or was ignorant of the law is not sufficient to avoid liability for liquidated damages once a violation of the law is found. *Brooks,* 185 F.3d at 137 (citing *Brunner,* 668 F.2d at 753); *Reich v.*

24

*Brenaman Electrical* Service, Civ. No. 95-3737, 1997 WL 164235, *8 (E.D. Pa. Mar. 28, 1997) (citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984)) (noting that "[a] good heart but an empty head does not produce a defense" against liquidated damages).

The "reasonableness" prong requires that the employer have objectively reasonable grounds for believing it was in compliance. *Brunner,* 668 F.2d at 753. The reasonableness is determined on an objective standard, and to satisfy the standard the employer must act "as a reasonably prudent man" under the same circumstances. *Brooks,* 185 F.3d at 137 ("ignorance alone is not sufficient in meeting the objective test"). An employer's burden of proof is "a difficult one to meet." *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987)). "In the absence of such proof, a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *Elwell v. Univ. Hosp. Home Care Services*, 276 F. 3d 832, 902 (6th Cir. 2002) (citing, *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)); *see also Min Fang Yang*, 345 Fed. Appx. 35, 39 (6th Cir. 2009). *See also Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 187 (3d Cir. 1988); *Tri-County Growers,* 747 F.2d at 129.

There is no evidence that Defendants made any good-faith effort to comply with the Act. The Defendants admit not having taken any steps to ascertain the Act's requirements with regard to the bonuses. McNeal Dep. 70:3-5; Calvin Bristol

Dep. 118:11 – 119:13.  Additionally, Defendants did not research how to address the payment of bonuses under the FLSA nor did they consult with anyone from the Department of Labor.  McNeal Dep. 70:6-12, 70:17-19; Calvin Bristol Dep. 119:14 – 120:6.   Mr. Bristol admits not understanding the requirements of Act, and he appointed to payroll someone who also lacks the knowledge and understanding of the Act. Calvin Bristol Dep. 113:7-17, 116:11-16; McNeal Dep. 64:2-6, 64:12-18. Additionally, no training was provided to address such lack of understanding. McNeal Dep. 68:11-22, 69:10-12; Calvin Bristol Dep. 116:17 – 117:19.

The Act and the regulations make it very clear that performance bonuses must be included in the regular rate.  There is no case law supporting Defendants' argument that the bonuses should not be included in the regular rate.  There is also no authority supporting the position that the fact that the bonuses were funded by the client makes a difference.  Defendants have no objectively reasonable grounds for believing that they were in compliance with the Act.  Defendants can only plead ignorance of the law, which is insufficient to overcome the imposition of the liquidated damages to which the employees would be entitled, pursuant to 29 U.S.C. § 216(b).  *Brooks,* 185 F.3d at 137.

## V.   The Undisputed Evidence Confirms that a total of $16,001.74 in Back Wage and Liquidated Damages Should be Awarded

Plaintiff has computed back wages due to the six Mix-off operators based on bonus payment records kept by Bristol Inc. Mowday Decl. ¶¶ 7-9.  Bristol Inc. kept

a record of the bonuses paid to the Mix-off operators.  Calvin Bristol Dep. 71:3-14;

McNeal Dep. 19:18– 20:24, 45:7 – 52-17; McNeal Dep. Ex. 3.  *See generally* Pl.'s

Mot. Summ. J.  Ex. H.  In such records, Bristol Inc. recorded the dates worked by

the Mix-off operator for when each bonus was earned, the hours worked in regular

time and overtime, the holes (worksite) worked, the amounts paid for regular time

and overtime, and the bonus amounts paid.  Pl.'s Mot.  Summ. J. Ex. H.  As the

records reflect, the bonuses were earned for work performed over the span of more

than one workweek.  *Id*.; Mowday Decl. ¶ 6.

When bonuses that expand over a time period longer than one workweek

cannot be identified with particular workweeks and cannot be allocated "in

proportion to the amount of the bonus actually earned each week," a method for

allocation that is "reasonable and equitable" must be adopted. 29 C.F.R.

§778.209(b).  One reasonable and equitable method of calculating such bonuses is

to "assume that the employee earned an equal amount of bonus each week of the

period to which the bonus relates."  *Id*.  Using this method, the back pay is

calculated by multiplying "one-half of the average hourly increase in pay resulting

from the bonus allocated to that week" by "the number of statutory overtime hours

worked in that week." *Id*.

The back pay in this case was computed using the bonus payment records

provided by Bristol Inc. and using the method prescribed under 29 C.F.R. §

27

778.209(b).  Mowday Decl. ¶¶ 6-9.  The overtime due was calculated by Bristol

Inc., which was then verified by the Wage and Hour Investigator.  Mowday Decl. ¶

¶ 7-9. *Compare* Mot. Summ. J. Ex. H *with* Mot. Summ. J. Ex. K.  Adding up all up

of the overtime compensation due for each Mix-off operator resulted in the

following total back wages due:  $1,864.98 to Michael Ciccarelli; $1,604.48 to

Justin Jennings; $1,878.63 to Daren Long; $1,037.30 due to Greg Robuck; $644.02

to Shane Rockwell; and $971.46 to Jeremy Tillotson.  Mot. Summ. J. Ex. K.  Thus,

$8,000.87 in back wages and an equal amount in liquidated damages is due, for a

total of $16,001.74.

## VI.    Defendants' Violations of the Act Warrant Injunctive Relief

Section 17 of the Act permits a court to enjoin violations of the FLSA.  29

U.S.C. § 217.  The question of whether an injunction should be granted is

addressed to the sound discretion of the trial court.  *Dole v. Haulaway*, 723 F.

Supp. at 288; *Donovan v. Rockwell Tire & Fuel, Inc.*, No. C-79—498, 1982 WL

2120, at *9 (M.D.N.C. Mar. 30, 1982) (citations omitted).  Ordinarily, a court

should grant prospective injunctive relief, even if the employer is in present

compliance, unless it is convinced that there is not reasonable probability of a

recurrence of the violations.  *See, e.g., Marshall v. Van Matre*, 634 F.2d 1115,

1118 (8th Cir. 1980); *Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir. 1958);

*Lenroot v. Kemp*, 153 F.2d 153, 156 (5th Cir. 1946); *Reich v. Cole Enter., Inc.*, 901

F. Supp. 255, 260 (S.D. Ohio 1993); *Brock v. Hamad*, No. 86-757-CIV-5, 1987 WL 46573, at *4 (E.D.N.C. Nov. 25, 1987).

In this case, Defendants' past conduct and overtime violation justify an injunction against future violations of the provisions of the FLSA.  Defendants' indifference to the requirements of Act and failure to ensure compliance makes injunctive relief against the Defendants justified and necessary.  Therefore, Plaintiff asks this Court to enjoin Defendants from excluding performance bonuses from the regular rate and from further violating the Act.

## CONCLUSION

For all the reasons set forth above, Plaintiff respectfully submits that this Court grant its Motion for Summary Judgment and find that: (1) Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207; (2) Defendant Calvin Bristol is an employer under Section 3(d) of the Act, 29 U.S.C. § 203(d), and therefore individually liable for the violations along with Bristol Inc.; (3) the amount of back wages due to the affected employer is $8,000.87; (4) Defendants' are liable for an additional equal amount in liquidated damages under 29 U.S.C. § 216(b); and (5) Defendants' violations warrant injunctive relief.

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that the foregoing Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment does not exceed  the 6,800 word count limit authorized by the Court in the March 21, 2017 Order granting Plaintiff's Motion for Leave to Exceed Word/Page Limitation.  The Memorandum, including the cover page, table of contents, and table of authorities, contains a total of 6,684 words.

*/s/ Bertha M. Astorga*
Bertha M. Astorga
Attorney PA Bar # 320644