## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

R. ALEXANDER ACOSTA,[1]

    Plaintiff,

  v.

BRISTOL EXCAVATING, INC., et al.,

    Defendants.

CIVIL ACTION NO. 4:16-CV-01512

(MEHALCHICK, M.J.)

### MEMORANDUM

  Resolution of the three pending motions for summary judgment requires the Court to determine whether an employer must include bonuses accrued by employees in the regular rate of pay for work the employees performed for a third-party, where the third-party set the standards for earning the bonus, and paid the bonus to the employer, who then paid the employees. In an apparent matter of first impression, the Court finds that bonuses originating from and determined exclusively by a third-party must be included in the regular rate of pay of an employee, where the employer sacrifices discretion over fact and amount and agrees to pay bonuses designed to incentivize employees into working harder. Accordingly, Plaintiff's motion for summary judgment (Doc. 19) is **GRANTED**, and Defendants' motions for summary judgment (Doc. 22; Doc. 23)[2] are **DENIED**.

---

 [1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Plaintiff Thomas E. Perez has been substituted with Acting Secretary of Labor R. Alexander Acosta.

 [2] Defendants Bristol Excavating, Inc. and Calvin Bristol filed one brief in support for both motions.

I.   **FACTUAL BACKGROUND**[3]

Defendant Bristol Excavating, Inc. is an excavation contractor, incorporated and engaging in business in the Commonwealth of Pennsylvania. Defendant Calvin Bristol is the owner and sole shareholder of Bristol Excavating. Bristol Excavating entered into a master service agreement with Talisman Energy Inc. ("Talisman"), whereupon Bristol Excavating would provide "mix off" services at Talisman's drilling sites, to be rendered by Bristol employees.

At some point around when Bristol employees began work at Talisman sites, the employees learned of a Talisman bonus program after discussions with non-Bristol employees. Talisman had a bonus program available to workers at its drilling sites, offering bonuses earned based on safety, efficiency, and completion of work. Bristol's employees spoke with Krystle Bristol, then business manager of Bristol Excavating, and she spoke with Talisman about the bonus program and the requirements for Bristol employees to participate. Per her discussions with Talisman, Krystle Bristol learned that mix off operators were indeed eligible for the Talisman bonus program.

The employees were then informed of the three available bonuses. The safety bonus was attained if there were no accidents or injuries during the job. The AFE bonus was attained for completing a hole faster than Talisman expected. The pacesetter bonus was attained also for efficiency, with the government describing the requirement as drilling a hole "faster than a

_____

[3] Because the facts are mostly undisputed, the Court omits citations to the record except where disputed.

specified amount of time" and Bristol characterizing the criteria as "drilling deeper on any given day than Talisman had anticipated." (Doc. 19-1, ¶ 17; Doc. 22-2, ¶ 29). Mix off operators knew the terms for earning each bonus.

Talisman retained sole discretion in determining whether or not the requirements for a bonus had been met. Once Talisman determined a particular bonus was earned, Talisman would email Bristol, who would then issue an invoice to Talisman for the amount of the bonus. Talisman would approve the amount cited on the invoice, and Bristol issued payment. Bristol also deducted taxes and fees prior to issuing a check to the employees. This check was issued separately from employee paychecks. Upon Krystle Bristol's departure, this process was outsourced to the accounting firm LaBarr & LaBarr, who continued issuing a separate check for the bonuses and not including the amount in the calculation of the employee's regular rate of pay. Over the course of this working relationship, Talisman changed the amount of the bonus at its leisure. At no point did the contract between the two include a provision on the bonuses.

## II.   PROCEDURAL HISTORY

On July 22, 2016, then-acting Secretary of Labor Thomas E. Perez brought this suit against Bristol Excavating and Calvin Bristol. (Doc. 1). In the complaint, the Secretary argued that Defendants' failure to include the bonus payments in the employees' regular rate of pay violated the Fair Labor Standards Act of 1938, codified at 29 U.S.C. § 201, *et seq.* (Doc. 1). The Secretary sought back wage compensation for each of the harmed employees and liquidated damages in an amount equal to the amount of back wages. (Doc. 1). Defendants answered on September 20, 2016, arguing that they did not have to include the bonuses in the regular rate of pay for overtime purposes because the bonuses were "discretionary gifts" from a customer and remuneration promised by Bristol. (Doc. 5; Doc. 6).

The parties consented to proceed before the undersigned on November 7, 2016. On March 24, 2017, the parties filed their respective motions for summary judgment, reinforcing their positions on interpreting § 207 under the facts presented. (Doc. 19; Doc. 22; Doc. 23). The parties participated in oral argument in support of their motions on August 14, 2017. Fully briefed, the motions are now ripe for review.

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In

deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*.

## IV.  DISCUSSION

As touched upon above, the key dispute is how the bonus arrangement between Bristol, Bristol's employees, and Talisman fits under § 207 of the Fair Labor Standards Act. Namely, the dispute centers upon whether these bonuses should have been included in the regular rate of pay of Bristol's employees, thus increasing the total compensation owed for overtime. Under § 207(a)(1):

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

The term "regular rate" is defined as "all remuneration for employment paid to, or on behalf of, the employee," with eight enumerated exceptions. 29 U.S.C. § 207(e). These exceptions are narrowly construed and the employer bears the burden of establishing the applicability of an exception. *Minizza v. Stone Container Corp. Corrugated Container Div. E. Plant., 842 F.2d 1426, 1459 (3d Cir. 1988)* (citations omitted). Three of these exceptions have been discussed either in briefs or at oral argument:  bonus payments as gifts; payments made for occasional periods when no work is performed; and payments paid for services, without prior agreement, where discretionary payment in fact and amount is retained by the employer. *See*

U.S.C. §§ 207(e)(1)-(3). Incentive bonuses are generally considered part of an employee's regular rate for overtime purposes. *See Walling v. Harnischfeger Corp.*, 325 U.S. 427, 431 (1945).

### A. APPLICABILITY OF § 207(e) EXCEPTIONS

"Regular rate" for the purposes of calculating overtime is not all-inclusive. Regular rate is not deemed to include: "sums paid as gifts…;" or "payments made for occasional periods when no work is performed[.]" 29 U.S.C. § 207(e)(1)-(2). Both of these arguments have been touched upon in the parties' briefs and at oral argument. Both exceptions are summarily inapplicable given the facts at hand.

The term "gifts" is meant to include "payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency[.]" 29 U.S.C. § 207(e)(1). Both parties acknowledge that the bonuses were dependent on work factors such as production and efficiency. (Doc. 19-1, at 5; Doc. 22-2, at 8). As the bonuses were incurred for strictly work-related performance, they cannot be characterized as gifts and immune from inclusion in the regular rate of pay.

At oral argument, counsel for the Defendants likened the bonuses received by Bristol employees to payments made for occasional periods when no work is performed. Under this exception to inclusion of bonuses in the regular rate:

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment [. . . ]

29 U.S.C. § 207(e)(2).

Counsel argued that bonuses based on production and efficiency would lead to early completion of work and by extension less money for Bristol Excavating. Thus, the bonuses were for work contrary to the Bristol's interest. Because the bonuses were attributable to time spent away from Bristol and contrary to Bristol's interests, then the bonuses constitute payments to an employee that are not compensation for his hours of employment.

Contrary to the characterization offered, these bonuses appear indisputably related to employment with Bristol, regardless of the facts that Bristol did not originate the bonuses and that bonuses were earned for work that would cut down on the days requiring Bristol employees to be present, thus costing Bristol money. The scope of an employer-employee relationship is far broader under the Fair Labor Standards Act than under traditional common law guidance. *See generally* 29 U.S.C. § 203(d)-(e); U.S. Dep't of Labor Wage Hour Division Field Operations Handbook § 10b05 (defining worker as an employee under FLSA "if, as a matter of economic reality, he or she is economically dependent on the employer."). The enumerated exceptions under the FLSA reflect non-inclusion for compensation related to time away from an enterprise, be it for the employee's interest or on an employer's behalf. Plainly, the bonuses in this matter were not tied to vacation or sick time or employer-driven time away where an employee incurs expenses, as the employees were at Talisman drilling sites by virtue of their employment with Bristol and Bristol's contractual agreement with Talisman. The employees were not distanced from Bristol's interests, only distanced from Bristol's place of business. Per Bristol's agreement with Talisman, it had agreed to provide employees to Talisman for their operations. Without these employees, Bristol has no contract and receives no compensation

from Talisman. Thus, the employees' performance at Talisman sites clearly advances Bristol's interests.

Even were the bonuses earned for work severable from Bristol's interests, they still do not fit the (e)(2) exception. The Regulations on non-productive worktime provide that:

> an employee must be compensated for all hours worked. As a general rule the term "hours worked" will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so.

29 C.F.R. § 778.223.

The bonuses were tied to hours of employment, as they could only be earned while on the clock. Particularly, the bonuses could only be earned by performance at Talisman worksites; worksites at which employees could not work but for their employment relationship with Bristol. Bristol sent the employees to Talisman worksites. Bristol compensated the employees for their time at Talisman worksites. The employees were on duty at a prescribed workplace at the behest of Bristol. While bonuses could be earned for efficient performance that in turn would require fewer days to complete the work and thus fewer days where Bristol needed to provide employees, the conduct of the employees remained squarely within the interests of Bristol and directly related to on-the-clock performance. There is simply no basis to conclude that the bonuses are "not made as compensation for hours of employment." Thus, the second exception is equally inapplicable to the facts at hand.

The third offered exception provides that discretionary payments or bonuses are not included in the regular rate. In order to exclude bonuses under (e)(3), an employer must retain sole discretion over the fact that a bonus will be paid and the amount to be paid until at or near the end of the period that would include the bonus.

- 8 -

promises in advance to pay a bonus, he has abandoned his discretion with regard to it." 29 C.F.R. § 778.211(b). Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. *Romano v. Site Acquisitions, LLC*, No. 15-CV-384-AJ, 2017 WL 2634643, at *8 (D.N.H. June 19, 2017) (citing 29 C.F.R. § 778.211(c)). Further, the bonus may only be excluded if there is no "prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 C.F.R. § 778.211(a). If the regularity and amount of a bonus may be ascertained by the application of a formula, then the bonus must be included in the regular rate. *Burke v. Mesta Mach. Co.*, 79 F.Supp. 588, 599-600 (W.D. Pa. 1948) (citations omitted). Thus, there are four requirements that must be met in order for a payment to be excludable under (e)(3):

(1) [t]he employer must retain discretion as to whether the payment will be made; (2) [t]he employer must retain discretion as to the amount; (3) [t]he employer must retain discretion as to the payment of the bonus until near the end of the period which it covers; and (4) [t]he bonus must not be paid pursuant to any prior contract, agreement, or promise.

*Abbey v. United States*, 99 Fed. Cl. 430, 438 (2011) (internal quotations omitted).

All four of these factors weigh in favor of inclusion of the bonuses in the regular rate of pay. Bristol did not have discretion in the fact that a bonus would be paid nor the amount of the payment,[4] as those were decisions made exclusively by Talisman. (Doc. 19-1, ¶ 27; Doc. 22-2, ¶ 19-20, 34). As Bristol never had discretion in bonus determinations, they did not retain

---

[4] Bristol did retain a portion of the bonuses for taxes and processing fees, but the amount of the bonus earned was not discretionary.

- 9 -

discretion until "near the end of the period for which it covers." Additionally, the bonus payments were subject to prior agreement or promise. While not contemplated in employment contracts or the Master Services Agreement between Bristol and Talisman (Doc. 22-2, ¶ 13), Bristol employees were aware of the specific terms necessary for earning a bonus and Bristol's participation in the scheme. (Doc. 19-1, ¶ 14-15, 20-21; Doc. 22-2, ¶ 16, 28-29). The absence of a contractual obligation does not render bonus payments promised to employees excludable from the regular rate of pay. *See Walling v. Richmond Screw Anchor Co.*, 154 F.2d 780, 784 (2d Cir. 1946). The employees knew prior to daily attendance at the job site how bonuses would be determined and earned. It is immaterial that the employees did not know prior to their first day of work about the bonuses. The question is whether they knew about the bonuses prior to their incentivized performance.

Accordingly, all four requirements for exclusion of bonus payments in the regular rate of pay weigh in favor of inclusion. Even considering the facts and evidence in the light most favorable to the Defendants, they have not met their burden of establishing the applicability of a § 207(e) exception. Bristol did not have discretion over the fact or amount of bonus payments and agreed to the terms provided. Further, the payments were incentive based and tied to work that benefitted Bristol. As the burden rests with the Defendants to establish that remuneration should be excluded under § 207(e), and concluding that the Defendants did not meet this burden, generally no further analysis would be required. The Court would be forced to conclude as a matter of law that the bonus payments are part of the regular rate of pay owed to employees.

B.  THE EFFECT OF THIRD-PARTY DISCRETION OVER BONUSES

Were the relationship between Bristol and Bristol's employees the sole consideration here, summary judgment would be warranted. However, having determined that the § 207(e) exceptions do not apply, the crux of this case is whether Talisman's retained discretion over the bonus payments usurps § 207's general rule that bonus payments must be included in the "regular rate" where an employer maintains no discretion over the bonus. More generally, are bonuses agreed to by an employer, but determined exclusively by a third-party based on safety and performance parameters, included in the regular rate of pay for overtime purposes? The parties believe this to be a case of first impression. The parties have not identified judicial precedent and the Court is unable to find any caselaw definitively answering the pertinent question of how the discretion of a third-party over bonuses affects the regular rate of pay under the FLSA.

Because precise guidance on the effect of third-party bonuses on the regular rate of pay is not addressed by the FLSA, the Court must consider if Congress intended for this type of payment to be included. It is well established that courts engaging in statutory interpretation first look to the plain language of the statute and where "the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result." *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) (citations omitted). Courts are to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous. *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).

As stated above, the statute defines "regular rate" to "include *all* remuneration for employment paid to, or on behalf of, the employee" subject to certain exceptions.

- 11 -

207(e) (emphasis added). "There is a statutory presumption . . . that remuneration in any form is included in the regular rate calculation." *Madison v. Res. For Human Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000). The bonus payments in question do not fit the exceptions provided in § 207(e). "Bonuses which do not qualify for exclusion from the regular rate as one of these types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based." 29 C.F.R. § 778.208. The language of the statute and regulations is clear and unambiguous: where no exception applies, bonus payments must be included in the regular rate. Given the remedial nature of the FLSA, it would be incongruent to assume Congress intended to limit "all remuneration" only to a traditional paycheck when an employee receives additional compensation for meeting designated work incentives.

In *Romano v. Site Acquisitions, LLC*, No. 15-CV-384-AJ, 2017 WL 2634643 (D.N.H. June 19, 2017), the same question faced the U.S. District Court for the District of New Hampshire. There, five employees of Site Acquisitions, LLC ("SAI") sued to recover incentive bonuses promised by non-party AT&T. *Romano*, 2017 WL 2634643, at *1. SAI entered into a contract with AT&T to provide "turf vendor" services, particularly tower crews who worked to install and modify AT&T facilities. *Romano*, 2017 WL 2634643, at *2. After entering into the agreement, AT&T announced an incentive plan, available only to the tower crews, where AT&T offered conditional bonuses based on the quality and speed of the work at tower sites. *Romano*, 2017 WL 2634643, at *2. SAI met with its employees to discuss the incentive bonus program. *Romano*, 2017 WL 2634643, at *2. SAI informed the employees of the payment breakdown. *Romano*, 2017 WL 2634643, at *3. When non-SAI tower crews began receiving the bonuses in their regular paychecks, the employees inquired about why they were not receiving them as well. *Romano*, 2017 WL 2634643, at *3. SAI reassured the employees that bonuses

would be paid. *Romano*, 2017 WL 2634643, at *3. At the end of the year, the employees received some measure of bonuses, however they argued the payments were inflated Christmas bonuses that had been paid annually by SAI and not the incentive bonuses from AT&T. *Romano*, 2017 WL 2634643, at *4. There was no dispute that AT&T had paid the bonuses to SAI as promised, however SAI retained portions of the payments for company use. *Romano*, 2017 WL 2634643, at *4.

SAI moved for summary judgment, arguing that the bonuses were both gifts and discretionary and thus fell under the § 207(e) exceptions under the FLSA. *Romano*, 2017 WL 2634643, at *8. The Court denied summary judgment on both theories. In determining that the bonuses were not discretionary as a matter of law, the Court pointed to the promise by SAI to pay bonuses, the known terms and amounts of bonuses, the fact that all parties knew which employees were eligible, and the incentivized nature of the bonuses as supporting a conclusion that the bonuses were not discretionary, nor gifts. *Romano*, 2017 WL 2634643, at *8-9. The fact that a third-party, AT&T, retained the decision-making power over the requirements for a bonus did not exclude the bonus from the regular rate. The Court reasoned that a "reasonable jury could conclude that SAI relinquished discretion over both the fact these bonuses would be paid to the plaintiffs and the amount that would be paid." *Romano*, 2017 WL 2634643, at *8.

The facts of this case are strikingly similar to those in *Romano*. Here, employer Bristol contracted with third-party Talisman to provide labor at Talisman work sites. (Doc. 19-1, ¶ 10-11; Doc. 22-2, 9). After commencement of work, Bristol employees became aware of a bonus program sponsored by the Talisman. (Doc. 19-1, ¶ 13; Doc. 22-2, ¶ 14). Bristol met with the employees and all parties understood the scope of the bonus program. (Doc. 19-1, ¶ 14-15; Doc. 22-2, ¶ 16-17). Employees were informed when they had met the requirements for bonuses and

in fact Talisman sent the payments to Bristol for processing to employees.[5] (Doc. 19-1, 27-28[6]; Doc. 22-2, ¶ 19-23). As with AT&T in *Romano*, Talisman made the ultimate decision on whether the terms for a bonus were met by the employees. (Doc. 19-1, ¶ 27; Doc. 22-2, ¶ 34). The *Romano* Court determined that it could not find the bonus payments discretionary on the part of the employer, and thus excludable from the regular rate of pay, as a matter of law. *See Romano*, 2017 WL 2634643, at *8.

Faced with similar circumstances here, the Court agrees that by the terms of the statute the requirements for exclusion under § 207(e)(3) are not met. It is apparent from the *Romano* opinion that inclusion of third-party driven bonuses in the regular rate does not produce the "absurd result" necessary for the Court to deviate from the plain language of the statute. Inclusion of the bonuses instead fits the intent and terms of § 207 that provide for inclusivity.

The Secretary directed the Court to Department of Labor administrative guidance that they argue further supports this position of inclusivity. (Doc. 19, at 20). Agency interpretive guidelines do not rise to the level of a regulation and do not have the effect of law. *Madison v. Res. For Human Dev., Inc.*, 233 F.3d 175, 186 (3d Cir. 2000) (quoting *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 135 (3d Cir. 1999)). To the extent agency interpretations are persuasive,

---

[5] In contrast to the ambiguity in *Romano*, Bristol's employees did in fact receive the bonuses paid.

[6] While the Secretary notes that Bristol paid the bonus amount approved by Talisman prior to receipt of the bonus, there has been no dispute that Talisman in fact paid the bonuses approved. Bristol's proactive payment approach—disputed by Krystle Bristol (Doc. 20-5, at 11)—does not factor into this decision.

- 14 -

courts may properly resort to the opinions for guidance. *Skidmore v. Swift*, 323 U.S. 134, 140 (1944).

In the 2005 letter, the Wage and Hour Division's Fair Labor Standards Team discussed whether vendor sponsored bonuses must be included in the regular rate of pay of a retail employee. WHD Opinion Letter, FLSA2005-4NA (July 5, 2005). The Wage and Hour Division determined that in situations where a vendor "informs the employees of the requirements for the bonus prior to the work being performed, these bonuses are promised to the employees who meet the vendor's requirements, rather than being paid at the discretion of the employer." WHD Opinion Letter, FLSA2005-4NA (July 5, 2005). Because the employer forfeited discretion, the bonus did not fit the exception and thus "must be included in the calculation of the employee's regular rate of pay." WHD Opinion Letter, FLSA2005-4NA (July 5, 2005).

The Wage and Hour Division's interpretation of regular rate is consistent with the language of the statute and with the judgment reached today. A reading of the letter demonstrates that a determination on the inclusivity of third-party bonuses under §207 does not revolve around the source of the bonus but on the applicability of the exceptions provided by the statute. Where a bonus does not satisfy any condition for exclusion, it must be included. While presenting a scenario in the retail context, the underlying theory of inclusion is no less

applicable to the case at hand.[7] It is clear that the Wage and Hour Division's interpretation of applying bonuses to the regular rate under § 207 is correct. The Talisman bonuses should have been included in the regular rate of pay for overtime purposes when calculated by Bristol.

## V.   DAMAGES

The Secretary argues that Calvin Bristol is jointly and severally liable as a joint employer under the FLSA, that the Defendants are liable for liquidated damages for a §207 violation, these damages total $16,001.74, and that injunctive relief is warranted to prevent future violations. (Doc. 19-1). The Defendants' briefs on summary judgment and in opposition to the Plaintiff's own do not present counters to any of these arguments, as the Defendants rested upon the applicability of § 207(e) to exclude the bonuses from the regular rate of pay.

The Court agrees that Calvin Bristol is generally liable for the FLSA violations committed by Bristol Excavating. The FLSA definition of an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). While it is well-settled at common law that individuals ordinarily are shielded from personal liability in a corporate setting, the intent of the FLSA strips away the shield in circumstances involving corporate officers with operational control. *See e.g. Crossley v. Elliot*, No. 1:07-CV-00017, 2011 WL 1107868, at *4 (D.V.I. Mar. 25, 2011) (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 668, 677 (1st Cir. 1998); *Gudsonovich v. Bus. Info. Co.*, 705 F.Supp. 262, 268 (W.D. Pa. 1985) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983))). "The

---

[7] The Secretary is not alone in finding the letter persuasive to overtime calculations in the oil and gas industry. *See* Punam Kaji, Meghaan McElroy & Arrissa Meyer, *Common Wage and Hour Issues in the Oil and Gas Industry*, 52-4 HOUS. LAWYER 20, 24 (2015).

overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Agnew*, 712 F.2d at 1511 (collecting cases). The Secretary correctly notes that courts in this Circuit recognize and apply the *Agnew* holding. *See Jackson v. Art of Life, Inc.*, 836 F.Supp.2d 226, 235 (E.D. Pa. 2011); *Kilvitis v. Cnty. of Luzerne*, 52 F.Supp.2d 403, 413 (M.D. Pa. 1999) (citing *Dole v. Haulaway, Inc.*, 723 F.Supp. 274, 286 (D.N.J. 1989)). Thus, corporate officers who retain operational control may be held joint and severally liable under the FLSA. Calvin Bristol is acknowledged as the president and sole owner of Bristol Excavating, responsible for all hiring, firing, and payment of Bristol's employees. (Doc. 22-2, ¶ 2). Accordingly, he is also joint and severally liable for the FLSA violations of Bristol Excavating.

The Secretary next argues that liquidated damages are warranted for Bristol's violation of § 207. (Doc. 19-1, at 25). Under 29 U.S.C. § 216(b), an "employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." The " liquidated damages provision is not penal in its nature but constitutes compensation for the retention of an employee's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). Courts are permitted to deny liquidated damages when an employer demonstrates good faith and reasonable grounds for believing their actions did not constitute an FLSA violation. 29 U.S.C. § 260. In order to show good faith, the defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless violated

its provisions. *Souryavong v. Lackawanna Cnty.*, 159 F.Supp.3d 514, 519 (M.D. Pa. 2016) (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907-10 (3d Cir. 1991) (internal quotations and emphasis omitted).

The Court's analysis need proceed no farther, as there is no evidence that Bristol undertook any effort to ascertain whether the bonuses should be included in the regular rate. Calvin Bristol, Krystle Bristol, and Jodi McNeal—the sole principal and both account managers who Bristol testified would have calculated overtime pay—all testified that they did not make any attempt to inquire into whether the bonuses from Talisman should be included. (Doc. 19-6, at 118-19; Doc. 19-7, at 70; Doc. 20-5, at 13-14). Accordingly, the Defendants cannot demonstrate good faith and reasonable grounds for exclusion, no matter how meritorious their belief was. By taking no affirmative steps, an employer cannot demonstrate good faith. *See Souryavong*, 159 F.Supp.3d at 519. Absent good faith, this Court is without discretion to reduce the otherwise mandatory liquidated damages provided for by the FLSA. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125 (1985).

The liquidated damages provision imposes liability equal to the amount of deficiency. Plaintiff has provided accounting of the bonuses owed, based upon calculations performed and provided to the Department of Labor by Bristol's account manager, Jodi McNeal. This accounting shows a deficiency of $8,000.87 in total;[8] an amount verified by the Department of

---

[8] $1,864.98 owed to Michael Cicarrelli; $1,604.48 owed to Justin Jennings; $1,878.63 owed to Daren Long; $1,037.30 owed to Greg Robuck; $644.02 owed to Shane Rockwell; and $971.46 owed to Jeremy Tillotson. (Doc. 20-8).

Labor. (Doc. 20-6; Doc. 20-8; Doc. 20-9). Combined with the mandatory liquidated damages, the total judgment owed by the Defendants for violations of § 207 is $16,001.74.

## VI.  INJUNCTIVE RELIEF

Lastly, the Secretary requests this Court issue injunctive relief to prevent recurrence of statutory violations. (Doc. 19-1, at 28). The FLSA authorizes district courts to issue injunctive relief restraining violations of § 207 upon a showing of cause. *Solis v. A-1 Mortg. Corp.*, 934 F.Supp.2d 778, 815 (W.D. Pa. 2013). "Whether to grant an injunction is within the court's sound discretion." *Solis*, 934 F.Supp.2d at 815 (citing *Dole v. Haulaway, Inc.*, 723 F.Supp. 274, 288 (D.N.J. 1989)). Courts consider the employer's past conduct, current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future. *Solis*, 934 F.Supp.2d at 815 (citing *Reich v. Petroleum Sales, Inc.*, 20 F.3d 654, 657 (6th Cir. 1994)).

Citing the past violations of the statute, giving rise to this action, and "indifference on the part of the Defendants, the Secretary asks the Court issue injunctive relief. As noted, past violations are not the only consideration. The Court also considers the reasonable possibility of recurrence. Considering the facts of this case, the Court has no reason to suspect abuse of the overtime provisions in the future. While the Defendants did not comply with the terms of the FLSA, this does not appear to be a case of malicious or intentional disregard of the statute. This Memorandum suffices to put the Defendants on notice of the requirements of § 207. Performance bonuses paid under the facts presented must be included in the regular rate of pay. Thus, the Court finds further pronouncement in the form of injunctive relief unnecessary.

VII.   SUMMARY

In light of the foregoing, Plaintiff's motion for summary judgment (Doc. 19) is **GRANTED IN PART and DENIED IN PART**. The failure of the Defendants to include bonus payments paid by Talisman was a violation of § 207 of the Fair Labor Standards Act. These bonuses did not fit any of the enumerated exceptions contained within § 207(e). Further, Defendant Calvin Bristol is jointly and severally liable for these violations. Additionally, liquidated damages are mandatory as a result of the Defendants' failure to show good cause for the violations. Judgment will be entered in the amount of $16,001.74, in accordance with the accounting provided. Conversely, the motions for summary judgment filed by the Defendants (Doc. 22; Doc. 23) are **DENIED**.

An appropriate Order follows.

Dated: **November 7, 2017**                          *s/ Karoline Mehalchick*

                                                                  **KAROLINE MEHALCHICK**
                                                                  **United States Magistrate Judge**